ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY V. MUDFORD.

1. COMMON CARRIER: *Damages for delay in delivering freight.*
   For the conversion or loss of goods, or total failure to deliver them to the consignee, a common carrier is liable only for their value and interest at six per cent. per annum.

2. SAME: *Same.*
   A common carrier is liable in damages for the negligent delay in the transportation of property; but the owner cannot on account of unreasonable delay in the transportation and delivery, refuse to receive the goods and sue as for a conversion. He can claim only the damages sustained by the delay.

3. DAMAGES: *For breach of contract: Measure of.*
   For the breach of every contract the law implies that some damages have resulted. Yet if a party seeks more than nominal damages he must prove actual or substantial loss, unless the contract furnishes a guide for the measurement of the damages.

APPEAL from *Miller* Circuit Court.

Hon. C. E. MITCHEL, Circuit Judge.

*Dodge & Johnson* for appellant.

The verdict is contrary to the evidence and is excessive. Plaintiff had no power to refuse to receive the goods and sue for their value. He could only sue for such damages as were caused by the delay. (*35 N. H., 400; 6 Hill, 588; Field on Damages, sec. 383; Story on Bailments, sec. 582; 12 N. Y., 515 and 518; 28 Barb., 520; Angell on Carriers, sec. 431–3.*) The only damage caused plaintiff was that caused by loss of time in *his search* for the goods, not exceeding twenty-five dollars.

2. In case of unreasonable delay by a carrier, the only damages recoverable are the actual losses sustained, less the freight due. *Hutchinson on Carriers, sec. 771; Field on Damages, sec. 375; Sedg. on Dam., marg. pp. 336, 359 and notes; Wood's Mayne on Dam., secs. 14, 15, 26, 31, 39; 47 N. Y., 33; 28 Barb., 520; 20 Wisc., 598; 54 Me., 378; 13 Allen, 384; 106 Mass., 470; 22 Ga., 273.*

3. No special damages were averred and none could be recovered. *1 Chitty on Pl., 348; 16 John., 127; 46 Miss., 458; 25 Ill., 88; Sedg. on Dam., p. 575; Hutchinson on Carriers, sec. 772; Field on Dam., secs. 388, 389; 4 Vroom, 517; 106 Mass., 468; 34 Vt., 565; 5 Jones, N. C., 301.*

*Scott & Jones* for appellee.

The verdict is not excessive. The machines were worth twenty-five dollars at the time of shipment. By the delay of appellant, the ginning season passed, and there was no sale for them when delivered. For the value of an article, as dependent on the season, see *17 C. B., 21; 9 C. B. (N. S.), 632; Wood's Mayne on Damages, secs. 16, 17.*

To set aside a verdict as excessive, the damages must

St. Louis, Iron Mountain & Southern Railway v. Mudford.

have been so large as to indicate passion or prejudice. It must be so flagrantly excessive that the mind at once perceives it to be grossly unjust or such as to warrant the belief that it was brought about by corruption, malice or undue influence or means. *25 Ark., 380; 1 Minn., 156; 10 Ib., 350; 27 Mo., 28; 27 Miss., 68; 54 Ga., 224; 12 Barb., 492; 24 Cal., 513; 38 Ill., 242.*

SMITH, J. Mudford filed the following complaint against the railway company, viz.:

" The plaintiff alleges that heretofore on the eighth day of February, 1881, said defendant was a common carrier for hire, from Texarkana, Miller County, Arkansas, to Cairo, in the State of Illinois, and on said day received from plaintiff at said Texarkana, one box of gin-sharpening machines, *for transportation to said Cairo, there to be delivered to a connecting carrier, to be forwarded to Goble Bros. & Co., at Cincinnati, Ohio.*

"Said box of gin-sharpening machines was of the value of nine hundred and fifty dollars, and was so to be by defendant as a carrier for a reward there agreed upon and paid to defendant by plaintiff, *carried and delivered to said connecting carrier within a reasonable time.*

"Said plaintiff alleges that three days is a reasonable time in which said machines *should have been transferred from Texarkana to Cairo, Illinois, aforesaid,* yet the defendant so negligently misbehaved in regard to the same in its calling as carrier for hire, that it failed and neglected *to deliver the said box to a connecting carrier* for transportation to Goble Bros. & Co., aforesaid, until the *sixteenth day of May, 1881,* to the plaintiff's damage in the sum of one thousand dollars, wherefore plaintiff prays judgment," etc.

Defendant filed the following answer :

" The defendant admits that there was some delay in the

transportation of said goods and the delivery of the same to a connecting carrier.

"It denies that said goods are of the value of nine hundred dollars, or that plaintiff was damaged, as alleged, by said delay, as alleged."

The only testimony in the case was that given by the plaintiff himself as follows:

"I am the plaintiff. I shipped the gin-sharpeners to Cincinnati by the defendant's road. There were forty-seven (47) of them. They *cost me five dollars apiece*. They were defective, and were shipped to Cincinnati for repairs. Machines were worth and sold for twenty-five dollars apiece at the time. It would have cost me one dollar apiece to send them to Cincinnati and back for repairs. *I was the patentee of the machine*. I was forced to get other machines by the delay. They were shipped in February and did not arrive at Cincinnati until May sixteenth, almost three months after they were shipped. The station agent of the defendant at Texarkana notified me that they were lost, and asked me to make a bill of them. I waited four or five weeks, and then ordered other machines. The time for using the machines was in the spring, and they would not sell so readily in May, on account of the lateness of the season. *When they were found*, the machines *were in the same condition as when they were shipped. They were worth five dollars when they were shipped, and were worth that when found*. I suppose I made as many as twenty trips into Texarkana to ask about them. I lived five miles away. It would, with ordinary diligence, require half a day to make a trip. My time was worth two dollars and a half per day. I refused to receive the machines when found."

Upon a trial before a jury the sum of $550 was awarded plaintiff. Defendant's motion for a new trial, alleging

St. Louis, Iron Mountain & Southern Railway v. Mudford.

misdirection of the jury, and that the verdict was contrary to the evidence and excessive in amount, was overruled.

It is obvious that the verdict is grossly in excess of any 1. COMMON CARRIER: damages that the plaintiff could have possibly sustained, Damages for delay of and that it cannot stand. If the railway company had freight. converted these machines to its own use, or had lost them, or for any other cause had wholly failed to deliver them to the connecting carrier, the measure of damages would have been their value, $235, with interest at the rate of six per cent. per annum. How then could the plaintiff be damaged in more than double this sum, when the goods were delivered in less than three months, and in the meantime had suffered no depreciation in market value, and no intrinsic deterioration?

A common carrier is liable in damages for a negligent 2. SAME: delay in the transportation of property. But the owner cannot, on account of unreasonable delay in the carriage and delivery, refuse to receive the goods and sue as for a conversion. *Hutchinson on Carriers, sec. 775 ; 3 Sutherland on Damages, 215; Scovill v. Griffith, 12 N. Y., 509.*

Consequently, when the defendant delivered the machines in good order to the connecting line at Cairo, it had performed its undertaking to carry, and was not responsible for their value as in case of a destruction or conversion. And the only claim which the plaintiff could have had against it was for the loss he had sustained by reason of the delay.

Now the complaint does not aver any special damages, that is, any damages which are not the necessary consequence of the delay, or which could not have been reasonably anticipated by the parties when the shipment was made. Hence none are recoverable except such as necessarily result from the injury complained of. *2 Gr. Ev., sec. 254; Sedgwick on Damages, 575.*

3. Damages for breach of contract    For the breach of every contract the law implies that some damage has resulted. Yet if a party seeks to recover more than nominal damages, there must be evidence of an actual, substantial loss, unless the contract itself furnishes a guide to the measurement of damages. *Adams Express Co. v. Egbert, 36 Pa. St., 360.*

The answer admitted that the delay was inexcusable, but no testimony was adduced to show that the plaintiff had sustained any pecuniary loss beyond the trouble and inconvenience of making inquiries for the machines.

Reversed and remanded for a new trial.